UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TYRE DAVIS,

        Petitioner,

   -against-

THE CITY OF NEW YORK,
POLICE OFFICERS JOSEPH
MURPHY, JOSE OCASIO, AND
JOHN DOE 1 & 2, SHIELD
NUMBERS UNKNOWN, ALL OF
THE 46 PRECINCT,

        Respondents.

11 Civ. _____ (    )

**COMPLAINT AND
DEMAND FOR JURY TRIAL**

      Plaintiff TYRE DAVIS, by and through his attorney, Steven H. Goldman, Esq., for his Complaint alleges as follows:

## PRELIMINARY STATEMENT

    1.    What happens when our protectors become our attackers? On February 17, 2011, Tyre Davis was in the unenviable position of experiencing that reversal for himself. It was on that date that Mr. Davis found himself on the receiving end of a vicious - and entirely gratuitous - attack by the very people whose job it is to safeguard the people of New York City. Two on-duty NYPD officers beat this slender, seventeen-year-old boy with a level of viciousness and bodily disregard that most people would not use against a dog. During the beating Mr. Davis simply lay on the ground and did his best to shield his face from the blows being rained upon him. When they finished, the two officers casually walked away, leaving Mr. Davis – bloodied and dazed – behind them. By their behavior, it is clear that the officers fully believed that no one would ever

know what they did to Mr. Davis; that they were free to beat Mr. Davis with impunity. Mr. Davis is bringing this lawsuit to disprove that assumption.

## THE PARTIES

2. Plaintiff Tyre Davis is a citizen of the United States and a resident of the County of New York and the State of New York.

3. Defendant City of New York ("the City") is a municipality organized and existing under the laws of the State of New York. At all times relevant hereto, the City, acting through the New York Police Department ("NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel. In addition, at all relevant times, the City was responsible for enforcing the rules of the NYPD (and regulations of the NYPD patrol guide), and for ensuring that the NYPD personnel obey the laws of the United States and of the State of New York.

4. At all times relevant hereto, defendants Joseph Murphy, Jose Ocasio and John Doe 1 & 2 were police officers employed by and/or under the supervision of the New York Police Department, acting in their capacity as agents, servants, and employees of the City of New York, and within the scope of their employment as such.

## JURISDICTION AND VENUE

5. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988 and New York state common law.

6. The jurisdiction of the Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a), and the doctrine of pendent jurisdiction for state law claims.

7. The acts complained of occurred in the Southern District of New York, and venue is lodged in the Court pursuant to 28 U.S.C. § 1391(b).

8. This action has been commenced within one year and three months after the happening of the event upon which the claim is based.

## JURY DEMAND

9. Plaintiff demands trial by jury in the action.

## FACTUAL ALLEGATIONS

10. On the date of the incident, Tyre Davis was a seventeen-year-old male living at 2084 Creston Avenue, Bronx, New York.

11. Mr. Davis currently resides at 845 Walton Avenue, Bronx, N.Y., together with Tiereka Amand Davis and Alexis Onelia Leon, Plaintiff's sisters.

12. Mr. Davis is currently employed at Wendy's, located at 233 Street and Boston Road in the Bronx.

13. On February 17, 2011, Mr. Davis, then seventeen years old, was arrested for allegedly blocking a sidewalk. He was taken to the 46 Precinct, where he was to be given a Desk Appearance Ticket ("DAT"). While he waited in the Precinct, he saw Officer Murphy, who a week earlier had arrested him for a different DAT offense – trespass - and who at that time had slapped him in the face while he sat handcuffed in the back of a patrol car. When Officer Murphy saw Mr. Davis again on February 17, he said

to him, "I remember you, you're the kid I smacked." Mr. Davis, in turn, had the temerity to reply, "Yeah, and I'm gonna take down your badge number." To this Officer Murphy said, "Oh yeah, you want my badge number?" Taking off his badge and placing it in his hand, Officer Murphy proceeded to smack Mr. Davis across the face with it several times.

14. Officer Murphy then grabbed Mr. Davis and took him to the front desk in the 46 Precinct. When Officer Murphy told the officer at the front desk what Mr. Davis had said, that officer, a Hispanic male, who was approximately 6'2", weighed approximately 250 pounds and had green eyes, said "Oh, you're gonna take down his badge number?" In response, Mr. Davis said, "I already got it." The Hispanic officer grabbed Mr. Davis and threw him against a radiator. A second officer, a white male approximately 5'9" in height and with a thin build, then took Mr. Davis and physically threw him out of the precinct. Mr. Davis' property and the DAT were thrown out the precinct door after him. Mr. Davis first picked-himself-up off the ground, then picked-up his property. After putting the property into his pockets, he began to walk away from the Precinct.

15. As Mr. Davis was walking away from the precinct, he noticed two police officers, Murphy and Ocasio, leave the Precinct together and begin to walk in his direction. Concerned for his safety, Mr. Davis began to walk more quickly and turned down a street. When he turned around a second time he noticed that the two officers were gaining on him. Shortly thereafter one of the officers called-out, "Yo." By this point the officers were nearly upon him. Mr. Davis turned and faced them, but took a couple of backward steps to put some distance between himself and the officers. Officer

Murphy stepped forward and punched Mr. Davis one time in the right side of his head, causing Mr. Davis to stumble backward. Officer Ocasio then stepped forward and threw a second punch, hitting Mr. Davis with one hard blow to the forehead, causing him to stumble backward until he bumped into a wall. When Mr. Davis hit the wall he fell into a squatting position, his back against the wall and the two officers in front of him. Officers Murphy and Ocasio then took turns kicking Mr. Davis. They alternated until each officer had kicked Mr. Davis approximately three times. Mr. Davis put-up his arms in an effort to protect himself, but the kicks were nonetheless landing on his head, face and body. When they finished kicking Mr. Davis, both officers turned around and walked back in the direction of the 46 Precinct.

16. When the attack ended, Mr. Davis sat on the ground in a state of shock. His hearing was initially impaired, and this soon became a ringing in his ears. He was also bleeding, dizzy and in substantial pain.

17. When Mr. Davis walked into the apartment he shared with his family a short time later, he was bleeding and crying. His dismayed mother, Onelia Leon, asked him how he got injured. He told her that he had been beaten by police from the 46 Precinct. His mother instructed his sister to call and have an ambulance sent to the 46 Precinct. She and her son and her daughters then went to the 46 Precinct.

18. When they entered the 46 Precinct, Ms. Leon walked-up to the gate separating the public from the nonpublic area of the Precinct. She informed an officer that she wanted to file a complaint about what happened to her son and asked to speak with a captain. When a person who Ms. Leon believed to be a captain approached her, she repeated her desire to file a complaint. The presumed captain pretended to search for

a complaint form for a minute, smirking as he did so. He then told her, "I think we ran out", and directed her to a red phone where she could make a complaint. He also told her that Mr. Davis and her daughters would have to leave the Precinct, though they were doing nothing wrong. It quickly became clear to Ms. Leon that the "Captain" was not actually interested in helping her file a complaint against the officers who attacked her son. When she picked-up the red phone to make the complaint, the ambulance arrived, so she hung-up the phone and took Mr. Davis outside to the ambulance.

19. Ms. Leon accompanied her son in the ambulance to Bronx Lebanon Hospital. Mr. Davis remained at the hospital for approximately three hours. Medical staff noted a 0.5 centimeter cut and contusion on his forehead, an abrasion on the right side of his face, swelling and tenderness behind his right ear, swelling and tenderness in the soft tissue of his head, and various contusions.

20. Mr. Davis was in pain for a week after the beating. During that week he also got painful headaches. The swelling to his forehead and the back of his head has not fully subsided to this day.

21. Unbeknownst to the two police officers, the beating they subjected Mr. Davis to was recorded by a video camera. Both officers were subsequently suspended from the NYPD and criminally charged with Assault 3, Official Misconduct and Harassment 2. The criminal cases against them both are pending in Bronx County.

22. Defendant officers lacked any legal justification for the beating they inflicted on Mr. Davis. They were not using reasonable force pursuant to an arrest. Indeed, Mr. Davis was not arrested after the beating. Their failure to arrest Mr. Davis after the beating speaks volumes about their intent at the time of the beating. Their intent

was not to effectuate an arrest, but to punish Mr. Davis for having had the temerity to stand-up for his rights in the precinct by asking Officer Murphy for his badge number. It was his willingness to stand-up for his rights against the arbitrary violence of Officer Murphy that incited them to follow him out of the Precinct and attack him. Officers Murphy and Ocasio wanted Mr. Davis to understand that they were in charge, not him; that if they wanted to hurt him, they would do so; and that Mr. Davis could do exactly nothing to stop them. Hurting Mr. Davis was the officer's goal, not a byproduct of a legal arrest or any other legitimate police activity.

23. As a result of the beating inflicted on Mr. Davis by members of the New York City Police Department, he suffered significant – and entirely unnecessary – physical and psychological injuries, as well as pain and suffering, fear, emotional distress, mental anguish and humiliation.

24. The beating of Mr. Davis lacked probable cause, and was done maliciously, falsely and in bad faith. Defendants acted in wanton and reckless disregard for his rights and emotional well-being.

25. As a direct and proximate result of Defendants' unlawful conduct, Mr. Davis suffered and/or continues to suffer physical, emotional and psychological pain, mental anguish and other losses.

26. The City either knew or should have known that the Individual Defendants were prone to use excessive and illegal force and were likely to engage in such excessive and illegal force.

27. This action has been commenced within one year and ninety days after the happening of the event upon which the claim is based.